The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

John Anthony ELDER, Defendant–Appellant.

No. 00CA0241.

Colorado Court of Appeals, Div. V.

Aug. 2, 2001.

Certiorari Denied Dec. 17, 2001.

Ken Salazar, Attorney General, Lauren Edelstein–Park, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge KAPELKE.

Defendant, John Anthony Elder, appeals the trial court's order revoking his probation and imposing a sentence to the Department of Corrections. We affirm.

In 1994, defendant was charged with one count of theft and nineteen counts of forgery. Pursuant to a plea agreement, he pled guilty to one count of forgery, and the remaining counts were dismissed. He was sentenced to two years probation. Over the following five years, defendant's probation was repeatedly revoked and regranted. The revocations were based upon his continuing failure to comply with the conditions of probation.

In 1999, the probation department filed a sixth complaint alleging that defendant had violated conditions of probation, and a warrant was issued for his arrest. In the meantime, he was charged in another case with felony possession of a schedule II controlled substance. Following his arrest, he pled guilty to attempted possession of a schedule II controlled substance. He also admitted violating conditions of his then-current probation.

Defendant was sentenced to intensive supervision probation (ISP) for three years on the drug conviction, with that sentence to run concurrently with his probation term in the forgery case. As pertinent here, his ISP included conditions that he: (1) maintain a permanent residence; (2) allow his probation officer to make scheduled or unscheduled contacts; (3) remain at the permanent residence from 9:00 p.m. until 5:00 a.m.; and (4) submit to random urinalysis at his expense.

Approximately three weeks after imposition of sentence, the probation department filed its seventh revocation complaint against defendant. The complaint alleged that he had violated the conditions noted above.

At the revocation hearing, defendant's probation officer testified that when she attempted to make a home curfew check at the address he had provided, he was not there. Further, the occupants of the residence informed her that defendant did not live there. She also testified that defendant was not at that residence when she made telephone curfew checks, that he failed to keep appointments in her office on six separate occasions, and that he failed to submit to urinalysis.

Defendant admitted these violations. He testified, however, that he had given his probation officer an alternate address and that she had promised to provide him money or bus tickets to allow him to keep his appointments but had failed to do so. He also testified that he had been told by another prisoner that a urinalysis screen would cost $8 and that he had "no currency whatsoever" to pay for the test. However, he acknowledged in his testimony that he was employed and that he had been advised by his probation officer that he was required to have only one permanent address.

The trial court found that, in contrast to the testimony of the probation officer, defendant's testimony was not credible and that the alleged violations had been proven by a preponderance of the evidence. The court further found that defendant had failed to benefit from probation, despite having received numerous opportunities to do so. Accordingly, the court concluded that probation was no longer appropriate.

The court therefore revoked defendant's probation and sentenced him to the Department of Corrections (DOC) for concurrent terms of three years in the drug case and one year in the forgery case. This appeal followed.

## I.

Defendant contends that the trial court made an erroneous assumption of fact, applied a wrong legal standard, and abused its discretion when it revoked his probation and sentenced him to the DOC. We disagree.

■ We initially reject defendant's assertion that he was not required to comply specifically with the conditions of his probation. Probation is a privilege, not a right, and if a probationer violates any condition of an order for probation, the probation may be revoked. *People v. Ickler*, 877 P.2d 863 (Colo.1994).

■ The question whether probation has been violated is one of fact for the trial court, to be determined under the preponderance of the evidence standard. Sections 16–11–205, 16–11–206, C.R.S.2000; *People v. Ickler, supra*. Once a violation is found, the decision whether to revoke a defendant's probation is within the trial court's discretion. *People v. Colabello*, 948 P.2d 77 (Colo.App.

1997). · A decision to revoke probation will not be disturbed unless the trial court's judgment is against the manifest weight of the evidence. *People v. Trujillo,* 189 Colo. 206, 539 P.2d 1234 (1975).

■ Contrary to defendant's contentions, the trial court applied the correct legal standard in reaching its ruling, and its decision to revoke defendant's probation is supported by the evidence. Specifically, defendant admitted that: (1) he was required to provide one permanent address where he could be contacted at specific times and had failed to do so; (2) he was required to meet with his probation officer and had failed to do so; and (3) he was required to submit to random urinalysis and had failed to do so. Therefore, the trial court did not err or abuse its discretion. *See People v. Trujillo, supra.*

Defendant now argues that the trial court based its decision on the erroneous assumption that urinalysis screens would be performed at no cost to defendant, and on the mistaken belief that his inability to pay would not excuse his failure to submit to urinalysis and to meet with his probation officer. We are not persuaded.

Even if we assume that defendant's compliance with conditions that he meet with his probation officer and submit to urinalysis screens would have entailed minor expenditures, the fact remains that he presented no evidence, other than his own self-serving statement, to show that he was unable to afford such expenses. The trial court was entitled to reject defendant's testimony in this regard, particularly in light of the fact that defendant was employed, went to work every day, and apparently had a regular income.

In addition, defendant signed an agreement stating the conditions of his ISP, including that he would be "charged a fee of $2.00 for each drug screen conducted by the Probation Department." Finally, the record reflects that defendant had a remarkable history of noncompliance with probationary conditions, including the same conditions at issue here.

The record thus fully supports the trial court's determination that defendant had violated conditions of his probation.

## II.

Defendant also contends that the trial court violated his right to due process by failing to make written findings. Again, we disagree.

■ A probationer in revocation proceedings is entitled to certain procedural due process rights, including a written statement by the fact finder as to the evidence relied on and the reasons for revoking probation. *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *People v. Allen,* 973 P.2d 620 (Colo.1999)(listing minimum due process components discussed in *Gagnon,* but not addressing issue presented here).

■■ The issue here is whether the trial court's oral findings made *on the record* satisfy these constitutional requirements. We conclude—as nearly all the federal courts that have considered the issue have also concluded—that oral findings by a court on the record can be sufficient. *See United States v. Daniel,* 209 F.3d 1091 (9th Cir.2000)(amended 216 F.3d 1201); *United States v. Copeland,* 20 F.3d 412 (11th Cir. 1994); *United States v. Gilbert,* 990 F.2d 916 (6th Cir.1993); *United States v. Copley,* 978 F.2d 829 (4th Cir.1992); *United States v. Barth,* 899 F.2d 199 (2d Cir.1990); *United States v. Yancey,* 827 F.2d 83 (7th Cir.1987); *Morishita v. Morris,* 702 F.2d 207 (10th Cir. 1983). *But see United States v. Smith,* 767 F.2d 521 (8th Cir.1985).

■ The purpose of requiring a "written statement" is to ensure accurate factfinding with respect to any alleged violation and to provide an adequate basis for review to determine if the decision rests on permissible grounds supported by the evidence. *Black v. Romano,* 471 U.S. 606, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985). That purpose is met where, as here, the trial court has made oral findings on the record as to the grounds for the revocation and the basis of the court's decision. *See United States v. Daniel, supra.*

As the Sixth Circuit Court of Appeals pointed out in *United States v. Gilbert, supra*, 990 F.2d at 917, "to require a judge to copy or paraphrase the transcript of his [or her] findings in the wake of a revocation hearing would elevate form over substance and do absolutely nothing to further secure the rights of those on supervised release."

Here, the verbatim transcript and the record of the proceedings clearly set forth the court's consideration of the evidence and the basis for its decision to revoke defendant's probation, thus allowing this court fully to review the ruling. Accordingly, we reject defendant's contention that his due process rights were violated.

The record as a whole amply supports the trial court's order revoking defendant's probation and imposing sentence.

Accordingly, the order is affirmed.

Judge TAUBMAN and Judge NIETO concur.